857 F.2d 1475
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mitchell SIMMONS, Plaintiff-Appellant,
Bernard P. Penzien, as personal representative of the estate
of Sally Hill, Deceased, Plaintiff,
v.
Frank DEBOTTIS, Defendant-Appellee.
 No. 87-1833.
 United States Court of Appeals, Sixth Circuit.
 Sept. 19, 1988.
 
 Before KENNEDY and WELLFORD, Circuit Judges and HERMAN J. WEBER*, District Judge.
 PER CURIAM.
 
 
 1
 We are concerned in this appeal with the interesting issue of the district court's use of certain factors to support its application of a negative multiplier to the lodestar amount of attorney fees sought by counsel for a prevailing party pursuant to the Civil Rights Attorneys' Fee Award Act of 1976, 42 U.S.C. Sec. 1988. An important aspect of the appeal is whether the district court apportioned the amount of the attorney fees award in respect to the amount of damages awarded to plaintiff in his underlying civil rights action. We examine the issue in light of City of Riverside v. Rivera, 477 U.S. 561 (1986), relied upon by counsel for plaintiff. We reverse and remand for further proceedings.
 
 
 2
 Suit was brought originally by plaintiffs Mitchell Simmons and by Clayton Preisel as personal representative of the Estate of Sally Hill against defendants Frank Debottis and John Bolgar, Southfield police officers, Edward A. Ritenourr, Southfield Chief of Police, and other unnamed members of the Southfield Police Department, and the City of Southfield itself. The complaint stated claims for relief under 42 U.S.C. Secs. 1983 and 1985 based upon alleged violations of Simmons' constitutional rights and additionally stated pendent state claims growing out of an alleged false arrest and malicious prosecution of Simmons and for Hill's wrongful death allegedly proximately caused by defendants' negligence. Simmons sought compensatory damages and punitive damages in the amount of $5,000,000 with respect to his federal claims, and other substantial damages pursuant to Michigan law. Hill's personal representative similarly sought substantial compensatory damages together with punitive damages. Both plaintiffs sought attorney fees and costs in addition to their damage claims.
 
 
 3
 Debottis, then working undercover and driving an unmarked police car, engaged in an altercation with Simmons, who was driving through Southfield on an interstate highway with Hill as a passenger in his car in August of 1980. Ultimately, Simmons' automobile was stopped, and he was arrested on "open" charges and searched. Simmons and Hill were taken to the Southfield Police Station where Simmons was jailed, allegedly without probable cause or warrant, and without being permitted to post bail. Hill was left to fend for herself, although she advised the police officers that due to a heart condition she was unable to operate Simmons' automobile in order to return to her home some distance away.
 
 
 4
 Simmons was released after one day in custody and later charged with reckless driving. Hill remained at the Southfield Police Department for some 15 hours without medication or food before being retrieved from her situation by a friend. Approximately two weeks later, Hill died of complications related to her cardiovascular disease, and it was claimed that this was related to the confrontation at issue primarily involving Debottis.
 
 
 5
 In April of 1981, Simmons was acquitted of the reckless driving charge by a jury. He expended approximately $3,000 in attorney fees defending the reckless driving charge. The present action was filed following the acquittal.
 
 
 6
 Prior to trial, the district court granted the defendants' motion for partial summary judgment on all federal claims asserted against Ritenourr and the City of Southfield, and the pendent state law claims against these two defendants were dismissed without prejudice. Simmons' Sec. 1985 claim was dismissed against all defendants. The Hill claims were also dismissed without prejudice prior to trial. Simmons also dismissed his state law claims against the remainder of the defendants. Prior to trial, Bolgar was dismissed from the case, apparently because his only involvement related to the conspiracy charges under Sec. 1985, which had been dismissed as to Debottis. The sole claim at issue when the matter came on for trial was Simmons' Sec. 1983 claim against Debottis.
 
 
 7
 The case was tried before a jury, which returned a verdict of only $3,000 in favor of Simmons. Judgment was entered thereon with interest, and Debottis moved for a new trial. Simmons moved for taxation of costs in the amount of $414.50, and claimed attorney fees for 146.4 hours of service at an hourly rate of $100 enhanced to reflect a claimed unique character of the case. All of the original defendants, except Debottis, also moved for taxation of attorney fees against Simmons.
 
 
 8
 By memorandum opinion and order dated January 27, 1986, the district court denied Debottis' motion for a new trial and granted Simmons' motion for costs. The motions for attorney fees were later argued. Simmons filed a supplemental brief directing the court's attention to the Rivera decision, which had just been decided. In a memorandum opinion and order, the district court denied the defendants' motion, and granted Simmons' motion.
 
 
 9
 In granting Simmons' motion for attorney fees, the district court utilized the guidelines set forth in Hensley v. Eckerhart, 461 U.S. 424 (1983), after deciding that Simmons was the prevailing party within the meaning of 42 U.S.C. Sec. 1988. The district court further allowed, without diminution, the total amount of hours claimed by counsel and multiplied that number by an hourly rate. The district judge then determined $100 an hour to be a lodestar figure, rejecting any claimed enhancement of the lodestar figure because the case was deemed to be an ordinary, and not an unusual, Sec. 1983 action.
 
 
 10
 The district court then determined "whether the lodestar should be adjusted commensurate with the success on the merits" and considered "whether the plaintiff achieved a level of success that justifies using the hours reasonably expended as the basis for the fee award." The district court noted that (1) all defendants save Debottis, and one plaintiff were ultimately dismissed from the case; (2) Simmons "did not uncover widespread corruption, nor he undertake a lengthy complex trial"; (3) Simmons recovered only $3,000 in the verdict after seeking very substantial compensatory and punitive damages for the violation of his civil rights; and (4) all pendent state claims were dismissed. In a footnote, the district court stated that "[w]hile not a dispositive factor, it should be noted that plaintiff received a settlement offer of $4,500 prior to commencement of trial." In sum, the district court found it appropriate to lower the lodestar amount by 75%, reducing the total award for attorney fees to $3,785. This attorney fee award is challenged on appeal.
 
 
 11
 Title 42 U.S.C. Sec. 1988 provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. Sec. 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." In Hensley the Supreme Court set forth factors to be considered and the appropriate analytical process to be utilized by district courts in determining whether and to what extent an award of attorney fees should be granted under this provision. First, Hensley called for a determination as to whether the plaintiff was a prevailing party. The next step "for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. "This figure, commonly referred to as the 'lodestar' is presumed to be the reasonable fee contemplated by Sec. 1988." Rivera, 477 U.S. at 568. Debottis does not challenge the district court's determination that Simmons was the prevailing party for purposes of Sec. 1988, nor does Debottis contest the district court's calculation of the award.
 
 
 12
 Hensley identified "other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' " 461 U.S. at 434.[1] The Court went on to state:
 
 
 13
 In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?
 
 
 14
 461 U.S. at 434. The first question requires the district court to determine whether "the plaintiff's claims for relief ... involve a common core of facts or [are] based on related legal theories ... making it difficult to divide the hours expended on a claim-by-claim basis." 461 U.S. at 435. Absent a common core of facts or related legal theories "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved' ... and therefore no fee may be awarded for services on the unsuccessful claim." 461 U.S. at 435 (citation omitted). Where claims are interrelated, the district court should address the second question and "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." 461 U.S. at 435. The Court noted that had the plaintiffs in Hensley prevailed on only one of their six general claims "a fee award based on the claimed hours clearly would have been excessive." 461 U.S. at 435. At the same time, a purely mathematical approach comparing the total number of issues in the case with those actually prevailed upon was rejected. 461 U.S. at 435, 436 n. 11.
 
 
 15
 The factors sanctioned by Hensley for determining an appropriate fee award may be considered either in setting the lodestar figure or in determining whether to modify the lodestar figure. After taking these factors into account, determination of an appropriate attorney fee award then rests within the sound discretion of the trial court, which must provide a "concise but clear explanation of its reasons for the fee award." 461 U.S. at 437.
 
 
 16
 Simmons contends that City of Riverside v. Rivera brought about a revision of the Hensley standards by rejecting a strict rule of proportionality between the amount of damages recovered and the amount of the attorney fee award. Simmons argues further that the district court violated the teachings of Rivera in determining this fee award.
 
 
 17
 The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under Sec. 1988. See Johnson, 488 F.2d, at 718. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. We reject the proposition that fee awards under Sec. 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.
 
 
 18
 Rivera, 477 U.S. at 574. While the Court rejected a strict rule of proportionality based upon the recognition that "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," id., the Court in Rivera did acknowledge that the damages recovery is a relevant factor to be taken into account. "[W]hile the amount of damages awarded is one factor to be considered in setting the amount of attorney's fees, the district court must also carefully consider any other relevant Johnson factors." Cobb v. Miller, 818 F.2d 1227, 1235 (5th Cir.1987). We consider that the plurality opinion in Rivera continues to adhere generally to the guidelines set forth in Hensley. See Student Public Interest Research Group of New Jersey, Inc. v. AT & T Bell Laboratories, 842 F.2d 1436 (3d Cir.1988) (post-Rivera decision remanding with concern for reduction in fee award under Hensley for failure to achieve complete success).
 
 
 19
 To the extent that our decisions in Northcross v. Board of Education of Memphis, 611 F.2d 624 (6th Cir.1979), cert. denied, 447 U.S. 911 (1980), and Kinney v. Rothchild, 678 F.2d 658 (6th Cir.1982), suggest that the size of a damages award cannot be a factor in determining an appropriate fee award, to that extent they appear to be overruled by Hensley and Rivera. To the extent that Northcross teaches that calculation of a Sec. 1988 fee award should be based solely upon the lodestar figure with reduction of hours allowed only for duplicative services, and has been construed in Kinney as rejecting the Johnson factors, these directions are no longer determinative in fee setting cases of this kind to the extent they are at odds with Hensley and Rivera.
 
 
 20
 In the instant case, it is unclear whether the district court sought proportionality in arriving at the amount of attorney fees to be awarded to Simmons. We agree that this case was not complex, and also note that it did not involve significant municipal policy with racial overtones as was the case in Rivera. The district court should also consider whether the other claims made by the dismissed plaintiff and those dismissed against other defendants were interrelated, and/or whether services in this connection were necessarily involved and connected with the Simmons' claim against Debottis; in short, whether all the hours claimed were reasonably and properly expended in pursuit of the sole eventual claim of Simmons against Debottis. The district court did not mention Rivera in its opinion, and the attorney fees award may either be proportionate to the damages verdict, in contravention to Rivera, or the district court may simply have taken the amount of the damage award into account as a factor in the final result reached, a proper course under Hensley and Rivera.
 
 
 21
 The manner in which a damages award, if deemed minimal, may have been considered in determining "level of success," and the "relief obtained" should be concisely and clearly set out by the district court, keeping in mind the concept of a "private attorney general" effectuating a societal benefit in Sec. 1983 and Sec. 1988 actions.
 
 
 22
 The court in Defilippo v. Morizio, 759 F.2d 231, 235 (2d Cir.1985), cited in Rivera, suggested that the district court in considering a reduction from the "lodestar" figure, consider the "size of the award ... commensurate with awards in [other such] cases generally rather than whether the award [is] viewed in some absolute terms ... high or low." At the same time, Defilippo recognized that a district court could well take into account the "quality of representation." Id. at 235. Defilippo cautioned against reducing a lodestar award based only on a finding that the case was "straight-forward," but suggested that "the nature of the case does raise the issue of the propriety of the proposed lodestar amount." Id. at 235.[2] Finally, we agree with the further admonition in that case:
 
 
 23
 In ruling on application for fees, district courts must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts ... [P]articular cases have particular needs. [T]he district court ... may look to its own familiarity with the case and its experience generally....
 
 
 24
 Id. at 235, 236. We have also recently discussed factors to be taken into account in considering "lodestar" attorney fee awards in the comparable Title VII civil rights context in Coulter v. Tennessee, 805 F.2d 146 (6th Cir.1986), cert. denied, 107 S.Ct. 3186 (1987). Compare Cunningham v. City of McKeesport, 807 F.2d 49 (3d Cir.1986), cert. denied, 107 S.Ct. 2179 (1987).
 
 
 25
 We accordingly REVERSE and REMAND this case to the district court for reconsideration and/or clarification of the attorney fee award in light of the principles herein expressed.
 
 
 
 *
 THE HONORABLE HERMAN J. WEBER, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Other factors which may be considered by the district court, identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974), are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases
 
 
 [2]
 The hours claimed as reasonably spent in Defilippo and approved by the district court before the reduction in the award were found by the appellate court to be "clearly excessive."